No. 90.—John G. Jones, plaintiff in error, *vs.* The State of Geor-gia, defendant in error.

Where one of three defendants, jointly indicted, elects to be tried *separately*, under the provision of the penal code, the trial, as to him, is to be considered in the same manner as if he had been *separately* indicted for the offence; and one of the defend-ants, not upon his trial, is a competent witness for his accomplice, to prove his in-nocence.

Where defendants jointly indicted elect to be tried separately, it is the privilege of the prosecuting officer, who asserts the affirmative as to their guilt, to determine who of them he will first put on his trial.

The act of 1833, giving the State half the number of challenges allowed the prisoner, in criminal cases, is constitutional. The right of trial by jury, as used in this State prior to the adoption of the Constitution, is in no wise impaired by that act.

This court will not grant a new trial in a criminal cause, unless some principle of law has been clearly violated, or where there is, manifestly, *no evidence* to sustain the verdict; the more especially, when the presiding judge, in the exercise of his dis-cretion, has refused the application in the court below, when all the circumstances attending the trial must have been fresh in his recollection.

This was an indictment, for the larceny of a slave, found against John G. Jones, the plaintiff in error, Allen Jones, William Adams, and Wil-

son Chambers, tried before Judge Merriwether, in the Superior Court of the county of Wilkinson, at October Term, 1846.

When the cause was called for trial, the counsel for the prisoners announced that they were ready for trial, and that they would *sever* on the trial. The solicitor-general responded, that he was ready in behalf of the State. The prisoners' counsel then inquired which the State designed to try first? to which the solicitor-general replied, that he would first put John G. Jones, the plaintiff in error, upon his trial. Whereupon the counsel for the prisoners then moved the court that Allen Jones be first put upon his trial, and stated as a reason therefor, that he was a material witness in behalf of the defence, and they desired that he should be first tried, in order that his testimony might be used to support the defence. Which motion was overruled by the court.

Whereupon the prisoner, John G. Jones, was put upon his trial; and the jurors being called, a full panel appeared. Dixon Rogers, the first juror called, was sworn on his *voire dire*, and the questions prescribed by the act of 1843, specifying the oath to be administered to jurors in criminal cases, were propounded to him, both of which he answered in the negative. The counsel for the prisoner then moved the court, that the juror should be asked whether he had formed and expressed any opinion as to the guilt or innocence of the prisoner at the bar; which was overruled by the court, and the juror was challenged peremptorily by the prisoner. Afterwards, another juror being called, and sworn on his *voire dire*, and the questions prescribed by the act of 1843 being propounded by the solicitor-general, and the juror answering both in the negative, he was peremptorily challenged by the solicitor-general, for the State, to which peremptory challenge the prisoner's counsel objected; which was overruled by the court, and the peremptory challenge allowed. To which the counsel for the prisoner excepted.

A jury of twelve having been empanneled, and sworn, to try the cause, testimony was adduced in behalf of the State, which proved that the slave, Mariah, the subject of the alleged larceny, was the property of Matthew Owens, the prosecutor, who resided in Florida, and who had purchased her in the said county of Wilkinson, and left her in charge of one John F. Paul, to remain several months, and until said Paul should himself remove to Florida. William Hall proved, that the negro was missing, but did not know how she went off; searched for her, and found her in Bulloch county. James Oliver proved the negro in the possession of the prisoner, in Bulloch county, and that he offered to sell her to Garrett Williams for $250 00. While in Bulloch with the negro, the prisoner stated, that he had purchased her from said Paul, against whom there was an execution, which Paul had promised to pay out of the purchase-money paid him by the prisoner, but which he did not pay, but ran away, and left the execution unsatisfied; and that he, the prisoner, had carried the negro to Bulloch, where he did not think she would be interrupted by the execution. The prisoner also stated, that the evening before he left home he was in Irwinton, and had a difficulty with an individual; had thrown a brickbat at him, hit him, and supposed that he had killed him; and that he left, to get out of the scrape, and had taken the negro with him, and had staid three weeks at his uncle's, in Emanuel county. That his brother had come down, and informed him

that the man with whom he had the difficulty was delirious, and that three of his negroes had been taken for the damages, and that he was afraid to return before the scrape was made up.

There was no evidence on the trial showing the truth of these statements. On the contrary, one witness testified that he did, not know that Paul had ever been sued.

The testimony, on the part of the State, having closed, the prisoner proved that he purchased said negro from the said Paul; and the bill of sale from Paul to prisoner was introduced, and read to the jury in evidence. Some part, or all, of the purchase-money was proven to have been paid Paul by the prisoner.

The evidence on both sides having closed, the court below charged the jury, that "if the prisoner had notice of the title of Owens at the time of his purchase from Paul, the jury might infer his guilt; but if he had no notice, he was innocent." The jury rendered a verdict, against the prisoner, of "Guilty."

Whereupon the counsel for the prisoner moved the court for a new trial, upon the following grounds:

1st. That the jury found contrary to law.

2d. That the jury found contrary to the evidence.

3d. That the jury found contrary to the aforesaid charge of the court.

4th. That the court erred in not acceding to the motion of prisoner's counsel to direct Allen Jones, a party in the same indictment, there having been a severance on the trial, to be tried first, and before the defendant, John G. Jones; it being stated by counsel in their places that said Allen Jones was a material witness for the defendant, John G. Jones, and that the notice so made was *bona fide*, and for the purposes stated.

The motion for a new trial was refused by the court below; and the counsel for the prisoner excepted.

IVERSON L. HARRIS and KENAN AND ROCKWELL, for the plaintiff in error.

JOHN M. ASHURST, Solicitor-General, for the State.

Argument of Mr. HARRIS, for the prisoner.

The motion in this case below, and denied by the presiding judge, was made before any step had been taken in the trial. No jury, or any part of it selected: no opening by the solicitor-general. The annunciation of the solicitor-general, in reply to a question put by the counsel of defendant below, that he would try John G. Jones first, don't detract from the force of the legal rights of defendant, as well recognized by numerous cases, the tithe of an atom.

Those rights are to have his co-accomplice rendered a *competent* witness, before he is himself put upon trial, if he should desire to have his testimony.

In this case, that testimony was desired; and with a view to its obtainment and in conformity with the uniform practice in the English courts, the motion was made.—See *Rowland's Case*, 21 *English Com. Law*, 471; edition of 1836 of *Roscoe Cr. Ev.* p. 118.

That the motion should have been allowed, is evident from the many adjudications that an accomplice included in an indictment cannot be a competent witness for another joined with him in the same indictment, though they have severed as the statute allows.

The case decided by C. J. Kent, in 10 *John.* p. 94, in the case of *The People* vs. *Bill; Lafone's case,* 5 *Esp.* 155; *U. S.* vs. *Henry, Wash. C. C. Repts.* 428; *Rex* vs. *Fletcher, Strange,* 633.

It will be urged by the solicitor-general, as he informs me, that it is the right of a person on trial, to call his co-accomplice—and who is included in the same indictment—as a witness; and in support of his competency, he relies on the statement of a principle of evidence by Mr. Starkie, p. 11 of 2d vol. of 2d edition, in the following words: " An accomplice is a competent witness, although indicted with another, if he be not put on his trial."

The authorities cited in support of it are *Bilmore's case, in* 1 *Hale's Pleas of the Crown,* 305; repeated in *Roscoe Cr. Ev.* 117, 118; and in 2 *Russ. Crim. L.,*597.

The principle stated goes beyond the case.

" I am not here to defend the grounds upon which the rule of incompetency has long been placed—*Sto super vias antiquas.*

Allen Jones was an incompetent witness for John G. Jones, until he had himself been first tried, because he was a party to the record. It is, in a tribunal bound to pronounce *the law as it is,* sufficient to say *sic ita lex scripsit.*

It is worthy of remark, that in the court below, the solicitor-general denied the very principle he *is* now affirming, in resisting the motion there made; and what is equally worthy of note is, that the judge did not place his denial of the motion upon this principle, but on the isolated position that the State had made its election previous to the motion.

The judge below erred in not granting a new trial to plaintiff in error, upon the two grounds, that they found contrary to law and against and without evidence.

John G. Jones held under a bill of sale from Paul, to whom he paid, as the proof shows, a fair and valuable consideration for the negro girl. The negro had been in Paul's possession from May until in August. Jones had a right to presume ownership in Paul of the negro, as possession of personal property is *prima facie* evidence of title.

There is an entire absence of all proof in the case of *any knowledge* in Jones of any claim of property by Owens in the slave. There are no facts in the case to authorize the inference of knowledge by the jury.

Knowledge is an essential ingredient to the crime of larceny in Jones. No force—no surprise, or trick, or device, or fraudulent expedient used in obtaining the possession of the negro.

The negro was legally in the possession of Paul, and was sold and delivered by him to Jones. How, then, could it be a larceny in Jones as to Owens; and there was none as to Paul.

A trespass is involved in every larceny. Unless there be a trespass in *taking* the slave by Jones, there cannot be a larceny in carrying her away to Bullock county, and there offering her for sale.—See 2 *East Pleas of Crown,* 556; 2 *Russel Cr. Law,* 95; *Roscoe Cred. Ev.* p. 469.

If the original taking is not *animo furandi,* a subsequent conversion to the parties' own use will not constitute larceny.—*Leigh's case,* 2 *East P. C.* 694; 1 *Leach,* 411; *People* vs. *Schuyler,* 5 *Cowen,* 572; *Roscoe Cr. Ev.* p. 477.

If a *bailee* of property, as a carrier to whom goods are *delivered* to be conveyed, steals them on the journey, it is not larceny.—1 *Hale Pleas Cr.* 504; *Levy's case,* 4 *C. and P.* 241.

If Paul had stolen (which he did not) the slave Mariah from Owens, the reputed owner, and then *delivered* her (as he did) to John G. Jones—who was no party, under the proof, to the hypothetical case put—and Jones had then carried off the slave *animo furandi,* yet Jones would be no felon to Owens.—1 *Hale Pleas Crown,* 507.

It is a principle of unquestioned authority, that if there be a fair claim of property, or right in the prisoner, or if it *be brought* into doubt at all, the court should direct an acquittal.—2 *East P. C. P.* 659.

All of *these* legal principles were violated by the finding of the jury, as the transcript of the evidence exhibits no proof whatever authorizing it. And the

judge committed error in law, by allowing a verdict to stand found contrary to law, as it was without evidence and against evidence.

The verdict, as its name implies, ought to be the very enunciation of truth. When bottomed upon a superficial and partial examination of the testimony, and announcing a result directly repugnant to the evidence as a whole, it is then a verdict contrary to evidence and calls for the interposition of the court.    To permit it to stand would bring courts into contempt and render the trial by jury a great public evil.

It matters not as to the discretion of the judge below in granting new trials. His is not a capricious discretion—it must be reasonable—it must be legal, and exercised conformably to legal principles.   The abuse of that discretion is a fruitful source of error.   If the jury, on the evidence, ought not to have convicted, the judge below should have allowed a new trial.   If there be error in either, this court should correct it, because the judge below has made the finding his—has adopted it—and that adoption furnishes both the opinion and decision, which are properly correctable here, and here only.

To refuse to correct erroneous denials of new trials by the judge below, will be to emasculate the powers of this court, and I may add, its virtues, of so much strength, as to render it the mere *umbra nominis.*

### Argument of Mr. Ashurst, Solicitor-General, for the State.

1st.  It was not necessary for the purpose of defendant, using Allen Jones (who is charged as an accomplice in the indictment) as a witness in his behalf, that he should have first been tried.   An accomplice is a competent witness, and may be examined, if he be willing, although he is indicted along with others.—2 *Starkie, Ev. p.* 12.

So an accomplice is a competent witness for his associates, unless disqualified by judgment, when indicted severally.—*ib.*

2d.  When several persons are indicted *jointly,* and *sever* upon their trial, the State may elect which to try first.—2 *Bailey R.* p. 66.

3d.  If the jury found according to evidence in this case, they found according to law.   A new trial will not be granted, unless the verdict is *manifestly* against evidence ; nor when the evidence is *doubtful* and *inconclusive* merely.—2 *Bailey's R.* p. 29.

4th.  What is simple larceny under our statute ?—*Prince,* 628, 630.

Was there not evidence by which the jury might infer a *wrongful* and *fraudulent* taking of the property ?

5th.  Has the State a right to peremptory challenge ?—*Prince,* 66, and decision of the Supreme Court in case of *State* vs. *Reynolds.*

6th.  The statute which gives the State a right to peremptory challenge in cases of felony, is not *inconsistent with* or *adverse to* a fair construction of the 5th section, 4th article of the constitution of Georgia.—*Prince,* 660, 912.

The constitution had reference to the *preservation* of *the right* of trial by jury, and does not take from the Legislature the power of regulating the *manner* of selecting jurors.

### Argument of Mr. Rockwell, for the prisoner.

1.  Previous to statute 33 *Edw.* 1. c. 5, the crown might challenge without showing cause.   Since that statute, however, the right of the crown to a challenge without showing cause, has not existed in England.   There has been controversy as to *the time* of showing cause, which is the sort of *peremptory* challenge mentioned in the books, that is, the right to cause the juror to *stand aside* until the panel be exhausted.   This statute is of force in Georgia.—*Schley Dig.* 415.

The constitution, in providing that the trial by jury as *heretofore used* should remain inviolate, was intended for the protection of the citizen.   The term hereto-

fore used must involve the mode of selecting the jury. If the Legislature can change the mode of selecting, they can as effectually deprive the citizen of the privilege of a trial by an impartial jury, by increasing the right of challenge on the part of the State, and by taking away the right of challenge from the citizen. The Legislature might say, any twelve men shall constitute the jury selected by the sheriff, chosen by the judge, or in any other manner they might choose to point out. Certainly, it would not be pretended any of the cases supposed would be consistent with the trial by jury, as used at the adoption of the constitution. The peremptory challenge, the right of refusing a juror, without assigning any reason therefor, is not considered as allowed by law to the State at the time of the adoption of the constitution. The section of the penal code extending to the State the benefit of ten peremptory challenges in case of felony, it is suggested, is therefore unconstitutional.

2d. An accomplice is not a competent witness for another, when both are joined in the same indictment. This rule rests upon the ground that he is a party to the record. If separately indicted, he is competent. The accomplice becomes competent, however, to testify in favor of another, although joined in the same indictment, whenever the case as to him is at an end. Hence, where several are tried jointly, if there be no evidence against one, the court may be moved to order an acquittal as to him, in order that he may testify in favor of his co-defendant. But if there be any evidence, even the slightest, although this rests in the discretion of the court, such motion will not be granted, because it is the province of the jury to pass upon the sufficiency of that evidence to convict.

If it is sought to use the accomplice as a witness for his co-defendant, and there be evidence against him, the rule is, to apply to the court to have him first tried, and acquitted or convicted, in accordance with the principle that the case as to him must be at an end before his competency can be restored. This record discloses the fact that the negro, the subject of the alleged larceny, was once at the house of the co-defendant, whose testimony was sought to be used. Hence, if all the defendants had been jointly tried, he would not have been entitled to an acquittal, as of course, in order to testify in favor of his co-defendants; and hence the propriety of the course of the counsel in moving to submit his case first to the jury in order to restore his competency. It was the only mode.

3d. The verdict rendered by the jury was contrary to law. The record shows that the defendant had a title to the negro by purchase, perfected by delivery of possession, from a *prima facie* owner, which title was unimpeached; and of course negatived the allegation that the negro was the property of the prosecutor. The finding of the jury has declared that title fraudulent and void, without the proof of a single badge of fraud recognized by the law. Presumptions are not grounded on a lighter basis in a criminal trial than would be allowed on the common law side of the court in a mere controversy about property.

4th. The verdict was contrary to evidence. The record shows that the prosecutor ordered the negro to be delivered to Paul, whether as agent or *bona fide* owner does not appear. If as agent, the proof was in the possession of the State's witness, but was not produced. The rule of law is, that the presumptions are against a party withholding evidence, and the defendant is entitled to the presumption in his favor, that the negro was delivered to Paul, not as *agent*, but as the owner particularly, when the circumstance of his retaining possession unchallenged, from May to August, is also taken into account; when it is remembered that Owens decided to leave the negro with the witness originally.

5th. The verdict was contrary to the charge of the court.

The court charged the jury: "If the prisoner had notice of the title of Owens, at the time of his purchase from Paul, the jury might infer his guilt, but if he had no notice, he was innocent."

This charge was based upon the facts proven. The record shows no evidence which fixes upon the defendant a knowledge of any title whatever in the prosecutor. The loose phrase *public notoriety* in relation to the sale, in the cross examination of the witness, was explained to mean the presence of several of the

neighbors. The defendant was not there. The return of the negro to Irwinton, and the absence of any claim interposed by the defendant, is not such a failure to assert his title as will bring him within the rule, that a party silent, when he should assert his right, is bound by his silence. He was not present, nor is it proved that he knew of it. There was no evidence to authorize the inference by the jury, that the defendant was aware of any claim of title to the negro on the part of the prosecutor. Of course there could not be a fraudulent and wrongful taking and carrying away the negro from the possession of the prosecutor. Indeed, there is no evidence that after the delivery to Paul, in May, the negro ever was in possession of the prosecutor.

### By the Court—WARNER, Judge.

In this case, the counsel for the prisoner insisted on the right to ask a juror, on his *voire dire*, after answering the questions propounded by the act of 1843, if he had formed and expressed any opinion as to the guilt or innocence of the prisoner at the bar, which was denied by the court. In the case of *Robinson* vs. *The State of Georgia*, decided during the present term, we held, the prisoner had not the right to ask that question of the juror on his *voire dire;* but if he wished to show the incompetency of the juror on that ground, he must do so before triers, to be appointed by the court, in the manner pointed out by law, as required by the act of 1843;—and now affirm that decision.

The counsel for the prisoner also excepted to the decision of the court below, allowing the solicitor-general peremptorily to challenge a juror, according to the provision of the 15th section of the 14th division of the Penal Code, which declares, "The State shall be allowed one-half the number of peremptory challenges allowed the prisoner."—*Prin. Dig.* 660. The right given to the State, peremptorily to challenge a juror, by the Penal Code of 1833, it is contended is a violation of that clause of the State Constitution which declares, "Trial by jury, as heretofore used in this State, shall remain inviolate." The trial by jury contemplated by the Constitution is, evidently, a trial by a common-law jury, of "*twelve free and lawful men, of the body of the county.*" But it is said the manner of selecting the twelve free and lawful men has been altered by the Penal Code of 1833, and, therefore, the right of trial by jury, as used in this State at the time of the adoption of the Constitution, in 1799, has been violated. Although we are not of the opinion it was the intention of the framers of the Constitution to impose a restriction on the Legislature as to the *manner* in which a jury of twelve free and lawful men, of the body of the county, should be selected for the trial of offences, yet it does not appear to us that any of the rights of the accused have been taken away or impaired, in a practical point of view, by the provision of the Penal Code of 1833, allowing the State half the number of peremptory challenges allowed the prisoner.

Before the enactment of the statute of 33 *Edward* 1, the king, without assigning any reason, might have challenged, peremptorily, as many of the panel as he thought proper; but since that statute the king was required to show cause of challenge. Such cause of challenge, however, was not required to be shown by the king until the whole panel was gone through; and the defendant was first put to show all his causes of challenge before the king need show any.—5 *Bacon's Ab.* 364-5. Such was

the practice in this State, it is believed, at the time of the adoption of the Constitution, and up to the time of the enactment of the Penal Code by the Legislature, in 1833. That act is entitled, " An Act to *reform*, *amend and consolidate* the Penal Laws of the State of Georgia." Prior to the enactment of the Penal Code, the prosecuting officer for the State, when a juror was called, instead of putting him upon the prisoner, or showing any cause of challenge whatever, peremptorily set him aside whenever he thought proper to do so, until the panel was gone through, or the prisoner, by being compelled to exhaust his peremptory challenges, had selected his jury. In this way the State, for all *practical* purposes, had, in very many cases, a greater advantage in getting rid of obnoxious jurors than it has now under the Penal Code; and in forcing upon the defendant jurors obnoxious to him, by compelling him to exhaust his peremptory challenges. The right of the State to pass jurors without showing any cause of challenge, we held, in the case of *Sealy* vs. *The State of Georgia*, and in the case of *Reynolds*, was taken away by the Penal Code of 1833, and half the number of peremptory challenges allowed the prisoner substituted in lieu of it ; which, in our judgment, is equally as favorable to the prisoner as the old law, and is not an infringement of the Constitution.

The counsel for the prisoner also moved the court below for a new trial, because the jury found contrary to law; because the jury found contrary to evidence ; and because the jury found contrary to the charge of the court. A new trial was also moved for, on the ground the court overruled the motion of defendant's counsel to put Allen Jones, who was jointly indicted with the prisoner, but who elected to be tried separately, on his trial first, for the reason, as was stated, that Allen Jones was a material witness for the prisoner.

By the 50th section of the 14th division of the Penal Code, it is declared : " When two or more defendants shall be jointly indicted for any offence, any one defendant may be tried *separately*, except such offences as require the action and concurrence of two or more to constitute the crime ; and, in such cases, the defendants shall be tried jointly."— *Prin. Dig.* 665. The defendants elected to be tried *separately* for the offence with which they were charged; and the indictment and trial is to be considered *several* as to each, as much so as if they had been *separately indicted*. Where prisoners indicted together sever in their defence, we are of the opinion it is the right of the prosecuting officer, who asserts the affirmative as to their guilt, to elect who of them he will first put upon his trial.— *The State* vs. *Crank, 2 Bail. Rep.* 66.

Besides, we are of the opinion, Allen Jones was a competent witness for the prisoner, they having severed in their trial. For the purposes of the trial, they are to be considered as if they had been *separately* indicted for the same offence. An accomplice who is separately indicted for the same offence, may be called as a witness, to prove the innocence of the prisoner.—1 *Chit. Crim. Law*, 605 ; *Roscoe's Crim. Ev.* 118 ; 2 *Russell on Crimes*, 597 ; 2 *Hale*, 281 ; 1 *Hale*, 305 ; *The United States* vs. *Henry*, 4 *Wash. Rep.* 429.

We the more readily adopt this rule, because it will have the effect to abolish a very pernicious practice which prevails in our courts, of including all persons who were present at the commission of an offence,

in many cases whether guilty or not, in the indictment, for the purpose of excluding their testimony.   Besides, it will open the door for the investigation of truth, leaving the jury to judge of the *credit* to which they may think the witness is entitled.

We are also of the opinion there was evidence from which the jury might have inferred the prisoner's guilt.

It was proved the negro was missing, and the witness who searched for her found her in Bulloch county.   It was also proved by another witness, the negro was in the possession of prisoner, in Bulloch county, and that he offered to sell her for $250 00.   In most cases of larceny of this particular species of property, the offence can only be established by circumstantial evidence.

With regard to the prisoner purchasing the negro from Paul, which was insisted on, by way of defence, the jury may not have believed the witnesses.   They may have been of the opinion it was all a concocted arrangement between Paul and the prisoner, to deprive the prosecutor of his property, *wrongfully* and *fraudulently*, *with intent to steal the same.* It was the peculiar province of the jury to judge of the evidence; and they have found the prisoner guilty; and we are not prepared to say there was *no evidence* in support of their verdict.   Besides, the presiding judge before whom the cause was tried, and who is presumed to have been familiar with all the facts and circumstances which transpired at the time of the trial, has, in the exercise of his discretion, refused the motion for a new trial in the court below; and it must be a very clear case of *error in law*, or a very naked, bald case as to the *facts*, which will authorize this court to control that discretion in a criminal cause, where the jury are made both the judges of the law and the facts.

We are, therefore, of the opinion there is no error in the record, and that the judgment of the court below be affirmed.